1
2
3
4
5
6 # UNITED STATES DISTRICT COURT
7 ## EASTERN DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| 9 SHERYL L. URSERY, | Case No. 1:12-CV-01793-SMS |
| 10   Plaintiff, | |
| 11   v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| 12 CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| 13   Defendant. | (Doc. 20) |
| 14 | |

15
16        Plaintiff Sheryl L. Ursery, by her attorneys, Law Offices of Lawrence D. Rohlfing, seeks

judicial review of a final decision of the Commissioner of Social Security ("Commissioner")

17 denying her application for disability insurance benefits pursuant to Title II and for supplemental

18 security income ("SSI") pursuant to Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*)

19 (the "Act").  The matter is before the Court on the parties' cross-briefs, which were submitted,

20 without oral argument, to the Honorable Sandra M. Snyder, U.S. Magistrate Judge.  Following a

21 review of the complete record and applicable law, the Court finds the decision of the Administrative

22 Law Judge ("ALJ") to be supported by substantial evidence.

23 I.    **Procedural History**

24        On February 2, 2009, Plaintiff applied for disability insurance benefits.  On February 2,

25 2009, she filed an application for supplemental security income.  In both applications, Plaintiff

26 alleged disability beginning June 26, 2007.  The Commissioner initially denied the claims on July 1,

27
28

2009, and upon reconsideration, on February 1, 2010.  On March 26, 2010, Plaintiff filed a timely request for a hearing.

At a May 23, 2011 hearing, Plaintiff requested and was granted a postponement so that she could obtain representation.  Plaintiff appeared without representation at a hearing on August 8, 2011, and was informed that the hearing would proceed.  At that same hearing, Plaintiff testified that she had lupus, rheumatoid arthritis, and experienced near-constant back and joint pain.  No other individuals testified on behalf of the Plaintiff.  An impartial vocational expert, Linda M. Ferra, also appeared and testified.

On August 29, 2011, Administrative Law Judge James Berry denied Plaintiff's application. The Appeals Council denied review on September 5, 2012.  On November 2, 2012, Plaintiff filed a complaint seeking this Court's review.

## II.   **Administrative Record**

**Plaintiff's testimony (August 8, 2011).**

Plaintiff, born March 21, 1959, lived with her parents and one granddaughter, aged 13. Plaintiff completed 11th Grade and a GED.  Her most recent work experience was as a certified nurse assistant, ("CNA"), for which she received training, and as a child care provider, and housekeeping cleaner, for which she received no formal training.

Plaintiff testified that she experienced pain from her neck down to her toes.  Plaintiff testified she had lupus and it mainly targeted her legs and lower back.  She stated that she had rheumatoid arthritis, back pain, and joint pain.  To manage her pain, Plaintiff reported taking tramadol and using a fentanyl patch as prescribed.  Plaintiff estimated she can lift five pounds and carry three pounds. She estimated she can stand for 15 minutes and sit for a total of 30 minutes in an eight-hour period. Plaintiff testified that she spends most of her days lying down and resting with her legs up.  Plaintiff did not allege any mental impairments, reported previously receiving mental health treatment for depression, but no current use of psychotropic medication.  Plaintiff testified that she maintains her driver's license and drives occasionally.  She also continues to cook and do household chores with

///

assistance, rests in "intervals," and grocery shops "with assistance."  Plaintiff testified she was five

feet five inches tall and weighed 172 pounds.

Plaintiff testified she was not currently working and was on general relief.  Plaintiff reported

that she last worked in 2007 at Boys and Girls Town child care for approximately 25-35 hours per

week.  Plaintiff was vague when describing the timing of her employment history, reporting that she

worked "off and on" for five years as a CNA.  She also testified that she worked part-time as a yard

supervisor for almost eight years, without specifying dates.  Plaintiff reported other "miscellaneous

work" in the last 15 years, such as short periods as a housekeeping maid and fast-food worker.

**Adult Function Reports.**

In her Adult Function Report, dated March 4, 2009, Plaintiff left blank the section where she

should describe her daily activities.  She did write that she took care of her granddaughter, who also

helped with chores and errands.  Plaintiff dressed and cared for herself, fixed simple meals, and

loved to cook but could not stand or be on her feet for long periods of time.  Plaintiff did laundry but

it hurt to bend down to get clothes out of the dryer.  When able, Plaintiff tried to get fresh air every

day walking.  She reported being able to walk 10 or 20 minutes before needing a rest.  Plaintiff

reported walking, using public transportation, and driving a car.  She wrote that she was able to

navigate in public alone and drove "sometimes."  She shopped for groceries once a week and

preferred for her daughter to help.  She spent time watching television "quite often" to take her mind

off the pain.  She could handle all aspects of her finances.

She noted she was often tired and got depressed.  Because she was often depressed, she did

not socialize much.  Plaintiff reported that she is "often depressed" and her social activities are

"staying home most of the time."  Plaintiff noted that "it is hard to focus at times," but that she can

follow written instructions "pretty good."

**Third Party Adult Function Report.**

In her March 2008 third-party adult function report, Plaintiff's sister, Kim Ursery, wrote that

Plaintiff did household chores such as laundry, clean furniture, cook, and take care of her grand-

daughter (sometimes referred to as her daughter or adopted daughter).  To describe Plaintiff's daily

///

3

activities, her sister wrote, "She gets the daughter fed and dressed for school after that she lays in bed for a while, gets cleaned up, daily meals, picks up kid from school, does homework, have dinner, mostly takes care of kid [and] lays around."  Plaintiff's sister reported that Plaintiff can pay attention for a "long time."  She also stated that Plaintiff goes outside a "couple times a day" and shops "maybe once a week" for "at least an hour."  Her sister also noted that Plaintiff attends her granddaughter's school or school functions and "she will either taker her to school or at least pick her up daily."  Since the onset of Plaintiff's condition, her sister reported that "she lays around a lot." Her sister noted that "I know she lives in enormous pain," and that "[s]he takes care of her daughter good."  The sister wrote that Plaintiff had no difficulty with most self-care, though she noted that when Plaintiff was getting dressed it was "hard for her to raise arms, bend knees sometimes," and when bathing, Plaintiff had "difficult[y] standing in shower very long" and "bend[ing] down in tub."

**Disability Appeal Report.**

In a report dated March 4, 2009, Plaintiff complained of experiencing pain "continuously in my lower back, legs, toes, fingers."  She described the pain as a "hot poking stick" and that it hurt "all day and night."  She complained that the pain concentrated on her lower back, that her shoulders hurt, and that "just a touch hurts."  Plaintiff reported that she had trouble sleeping in any position.  In describing the pain, she reported that sometimes she had to stay in bed due to the pain.  She relieved her pain by resting and with a fentanyl patch, among other medications.  She wrote that she had injections to relieve the pain in the past but "it did not help much."  She reported that at times she was dizzy.  As for activities, she stated that she walked to the mailbox to get the mail, tried to clean her room, but that her granddaughter has to do "all" chores because she hurts too much.  Plaintiff wrote that after she was diagnosed in 2003, she experienced pain "to the point I would pass out." She had to stop activities for 10-20 minutes to rest because of the pain.  She was able to walk "maybe 25 feet," stand 15 minutes at a time, and was able to sit "maybe 10 or 15 minutes" at a time. She needed her daughter's assistance when doing errands.  Plaintiff remarked that she had seen more than five doctors for her constant pain and that some days "I hurt so bad I cry."  As for medicating her pain, Plaintiff noted she was taking 800 mg. of ibuprofen three times per day, and robaxin, a muscle relaxer.

In her March 26, 2010 report, Plaintiff stated that since October 1, 2009, her progressive pain problems had worsened.  Since her last disability report she had seen Arturo Palencia, M.D. at the Pain Institute of Central California, who had evaluated her and ordered medication and an MRI. Plaintiff wrote that Dr. Palencia had prescribed a fentanyl patch for pain and robaxin, a muscle relaxant.  Plaintiff reported no new illnesses, injuries, or conditions that affected her ability to work or care for herself.  Plaintiff reported no changes to her daily activities.

**Medical Evidence.**

The ALJ properly considered the following medical records and opinions.  The medical evidence shows Plaintiff was diagnosed with chronic degenerative joint disease, low back/hip pain, and chronic arthritis in March 2008.  She was prescribed narcotic level pain medication.  In April 2008, she received care for a swollen left knee and was diagnosed with osteoarthritis.  In November 2008, laboratory work showed a positive anachoice TM screen.  In December 2008, treating notes showed that Plaintiff had been diagnosed with degenerative joint disease and possible lupus.  A December 2008 magnetic resonance imaging of Plaintiff's lumbar spine revealed mild levoscoliosis, desiccation of all lumbar discs, without large disc protrusions, and a minimal annular bulge at L4-L5 resulting in mild central stenosis, but without foraminal encroachment.  By February 2009, the diagnosis was changed to lupus and Plaintiff was referred to a pain specialist and rheumatologist.

In March 2009, Plaintiff's primary care physician referred her to Kern County Mental Health.  Plaintiff reported experiencing overwhelming anxiety, sleep disturbances, and crying episodes.  Plaintiff was seen again later that month.  The treating notes indicate she was in an acute state of depression.  She was diagnosed with major depressive disorder, recurrent, moderate, and individual therapy was recommended.  There is no evidence of further mental health treatment.

In May 2009, Sarupinder Bhangoo, M.D., performed a comprehensive internal medicine evaluation on Plaintiff.  Dr. Bhangoo also reviewed Plaintiff's medical records.  Dr. Bhangoo noted that Plaintiff complained of left knee replacement and chronic pain in her low back and hands.  Dr.

Bhangoo noted normal findings after examining Plaintiff's spine, hips, knees, ankles, shoulders, elbows, wrists, fingers, thumbs, motor strength, senses, reflexes, and cranial nerves.  Based on the examination, Dr. Bhangoo opined that in an eight-hour workday Plaintiff could stand/walk for six hours, sit for eight hours, could lift/carry 50 pounds occasionally and 25 pounds frequently, with the only postural limitation being occasional crouching to protect Plaintiff's knees.

Also in May 2009, Plaintiff was seen by consultative psychologist, Gil Schmidt, to whom she complained of depression.  Dr. Schmidt noted that Plaintiff exhibited a depressive affect but she was fully oriented, and her memory appeared intact.  Dr. Schmidt diagnosed Plaintiff with pain disorder, associated with both psychological factors and a general medical condition; depressive disorder, not otherwise specified; and personality disorder, with features of narcissism.  Dr. Schmidt estimated that Plaintiff's global assessment of functioning was 51-60, denoting moderate symptoms or difficulty in social, occupational, or school functioning, citing the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. Text Revised, p. 32.  Dr. Schmidt opined that Plaintiff's symptoms would abate within 12 months and that she was capable of performing simple repetitive tasks.  The consulting physician reviewed Plaintiff's medical records regarding her mental impairments and concluded that they were non-severe.

In January 2010, J. Mitchel, M.D., reviewed the medical evidence of record and completed a physical residual functional capacity ("RFC") assessment.  Based on a review of the medical evidence, Dr. Mitchel opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand/walk for six hours in an eight-hour day, sit for six hours in an eight-hour day, and would have very few postural limitations.  The state agency consultants agreed to this assessment.

Beginning in July 2010, Plaintiff began seeing Ashok Parmar, M.D., who performed a Comprehensive Initial Pain Management Consultation.  Dr. Parmar saw Plaintiff again in August 2010.  At a January 2011 follow-up examination, Dr. Parmar found that Plaintiff exhibited a normal

///

gait, but had a restricted range of motion in her lumbar spine.  Dr. Parmer also noted that Plaintiff

showed no tenderness to palpation of her lower lumbar spine, sacroiliac joint or lumbar facet joints.

**Vocational expert testimony.**

Linda M. Ferra testified as vocational expert.  She classified Plaintiff's child care work as

child monitor (medium, semi-skilled, SVP 3).  She testified that based on the claimant's RFC, she

would be able to perform her prior relevant work as a child care provider or housekeeping cleaner,

but not as a CNA.  In comparing the claimant's RFC with the physical and mental demands of this

work, the ALJ found that Plaintiff was able to perform it as actually and generally performed.

## II.  Discussion

The ALJ found that Plaintiff met the insured status requirements of the Act through

December 31, 2011.  Plaintiff had not engaged in substantial gainful activity since June 26, 2007, her

alleged onset date.  Although Plaintiff had severe impairments, she did not have any presumptively

disabling impairments set forth in the listing of impairments.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ found that Plaintiff had the physical RFC to lift and/or carry 50 pounds occasionally, 25

pounds frequently, and stand, sit, and walk up to six hours in an eight-hour work day.  Her

impairments limited her to occasionally kneeling, crouching, crawling, and occasionally climbing

ladders, ropes, or scaffolds.  Plaintiff could frequently balance, stoop and climb ramps and stairs, and

had the mental RFC to perform simple, repetitive tasks.  The ALJ determined that Plaintiff was not

disabled because she could perform a significant number of jobs given her RFC.

### A.  Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in

substantial gainful activity because of a medically determinable physical or mental impairment

which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c (a)(3)(A).  A claimant must demonstrate a physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work, but cannot, considering age,

7

education, and work experience, engage in any other substantial gainful work existing in the national

economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations

prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§

404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one:      Is the claimant engaging in substantial gainful activity? If so, the
               claimant is found not disabled. If not, proceed to step two.

Step two:      Does the claimant have a "severe" impairment? If so, proceed to step
               three. If not, then a finding of not disabled is appropriate.

Step three:    Does the claimant's impairment or combination of impairments meet
               or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?
               If so, the claimant is automatically determined disabled. If not,
               proceed to step four.

Step four:     Is the claimant capable of performing his past work? If so, the
               claimant is not disabled. If not, proceed to step five.

Step five:     Does the claimant have the residual functional capacity to perform any
               other work? If so, the claimant is not disabled. If not, the claimant is
               disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

**B.      Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to

deny benefits under the Act. In reviewing findings of fact with respect to such determinations, a

court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C.

§ 405(g). Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S.

389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.

10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's

decision. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and

making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).  "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

### C.    Physicians' Opinions

Plaintiff challenges the ALJ's analysis of her credibility, contending that he erred in rejecting her subjective reports of disability in favor of the opinions of the examining and non-examining physicians.  The Commissioner replies that the ALJ did not err in relying on the opinions of Drs. Bhangoo, Mitchel, Parmar, Schmidt, and Hartman, who were consistent with the objective evidence of record and the conservative treatment provided to Plaintiff, and in rejecting Plaintiff's extreme subjective reports.  To quote J. Hartman, M.D., Plaintiff's "subjective complaints are greater than the objective findings" and not consistent with the objective evidence.

**Plaintiff's credibility.**

Before considering medical opinion, the Court finds it relevant to consider Plaintiff's credibility, an important factor in evaluating her claims.  The ALJ found that although Plaintiff's reported symptoms were consistent with objective medical evidence, her reports of the intensity, persistence, and limiting effects of her symptoms were not fully credible.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988).  He or she must set

9

forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive.  *Orn*, 495 F.3d at 635.  *See also Robbins v. Social Security Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between her testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms.  *Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).  If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision.  *Thomas*, 278 F.3d at 959.

In this case, the ALJ noted Plaintiff's inconsistencies in her claims to the agency and her representations to other physicians and their objective records.  For example, Plaintiff stated to the ALJ that she would "lose my balance.  I just fall."  Yet Dr. Bhangoo noted in his report that Plaintiff "moves around well."  Although she reported to the Commissioner that she does little if any housework, Dr. Bhangoo noted that Plaintiff "is able to do her personal care, household work including laundry, dressing, shopping, and able to drive.  She came to the examination place via public bus.  She does her own housekeeping."  In contrast, Plaintiff reported to the Commissioner

that her granddaughter performs "all" housework.  Dr. Bhangoo summarized that Plaintiff "is

capable of normal day-to-day working" and, despite her back pain, "she seemed to be doing well and

she does not have any specific musculoskeletal or neurological deficits.  Hence, no disability can be

assigned to her back."

Though Plaintiff complains of near constant pain, objective records from G. Schmidt, Psy.D.,

dated May 14, 2009, indicate that Plaintiff's chief complaint is depression.  Plaintiff reported to Dr.

Schmidt that she liked to walk and on her good days she tends to overdo activities, but, typically, she

lies about the living room or her bedroom.  The ALJ contrasted Plaintiff's claimed impairments and

estimates of only being able to lift five pounds and carry three pounds with the well-documented

medical assessments that Plaintiff had the RFC to lift and carry 50 pounds occasionally and 25

pounds frequently.  The ALJ noted that he gave considerable weight to Dr. Schmidt's detailed

psychological evaluation which reflects that he believed the Plaintiff's symptoms would abate within

twelve months.

Inconsistencies between Plaintiff's claims and testimony, and her written adult function

report also support the ALJ's finding that Plaintiff lacked credibility.  In March 2009, for example,

after she had asserted disability, Plaintiff wrote that she was taking her granddaughter to school

daily, cooking dinner, loading laundry, and other light house cleaning.  Plaintiff also reported liking

to walk, occasionally overdoing activities, shopping once a week for about an hour, and taking

public transportation without assistance.  Her principle difficulty was increased pain in the morning

and evenings.  Then, after the agency denied her application for disability benefits in July 2009,

Plaintiff reported progressive decline and increased pain, but did not report any new injuries, illness,

or conditions that affected her ability to work.

In March 2010, Plaintiff stated that since the Commissioner denied her claim her pain had

worsened.  However, medical records show no objective evidence of Plaintiff's declining health and

Plaintiff reported no changes to her daily activities.  Plaintiff testified at the August 2011 hearing that she was unable to cook, clean, or shop without assistance.  This contradicts Plaintiff's previous self-report that she helped take care of her granddaughter, took her or picked her up from school each day, cooked basic meals, did light housekeeping with rest, and cleaned furniture.  Plaintiff's sister's third-party report was that Plaintiff takes good care of her granddaughter and attends school functions.

In short, the record supports the ALJ's conclusion that Plaintiff lacked credibility.  Because of Plaintiff's lack of credibility, every medical opinion presented must be evaluated in light of its dependence on Plaintiff's self-serving representations.  The ALJ properly did so, limiting his reliance on opinions based on Plaintiff's subjective representations of her physical condition.

**Expert medical opinions.**

Physicians render two types of opinions in disability cases: (1) clinical medical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "An ALJ is not bound by an expert medical opinion on the ultimate question of disability."  *Tomasetti*, 533 F.3d at 1041; S.S.R. 96-5p.  Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] not treat[ed] the claimant (nonexamining physicians)."  *Lester*, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nontreating physician.  *Id.*  The Social Security Administration favors the opinion of a treating physician over that of nontreating physicians.  20 C.F.R. § 404.1527; *Orn*, 495 F.3d at 631.  A treating physician is employed to cure and has a greater opportunity to know and observe the patient.  *Sprague v. Bowen*,

12

812 F.2d 1226, 1230 (9th Cir. 1987).  Nonetheless, a treating physician's opinion is not conclusive as to either a physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ must determine a claimant's RFC based on "all relevant evidence in the record." *Valentine v. Commissioner of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding.  *Magallanes*, 881 F.2d at 751-55.  The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.  Although an ALJ is not bound by uncontroverted opinions rendered by a plaintiff's physicians regarding the ultimate issue of disability, he or she cannot reject them out of hand, but must set forth clear and convincing reasons for rejecting them. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).  The ALJ must tie the objective factors of the record as a whole to the opinions and findings that he or she rejects.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.  *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 2007.  Her severe impairments were lupus and degenerative disc disease.  None of these impairments or in any combination met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  Plaintiff was capable of performing medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following modifications: lift and/or carry 50 pounds occasionally, 25 pounds frequently; stand, sit, and walk up to six hours in an eight-hour work day; occasionally kneeling, crouching, crawling, and occasionally climbing ladders,

ropes, or scaffolds; frequently balance, stoop and climb ramps and stairs; and had the mental RFC to perform simple, repetitive tasks.  Plaintiff was capable of performing her prior work as a child care provider or housekeeper, but not as a CNA.  Accordingly, Plaintiff was not disabled, as defined by the Social Security Act.

Plaintiff contends that the ALJ erred by favoring the objective opinions of examining and non-examining physicians, who agree that Plaintiff is not disabled, over Plaintiff's subjective opinion that she is disabled.  The ALJ carefully analyzed the various expert opinions regarding Plaintiff's RFC, including those of her treating physicians; of the consultative physician, Dr. Bhangoo; and of the non-examining physicians, Dr. Schmidt, as well as the treatment records of Dr. Palencia and Dr. Parmar.  The ALJ explained in detail his preference for the opinion of the physicians, whose treatment records and consultative reports contemplated Plaintiff's various symptoms and diagnoses, the objective medical evidence, and her treatment regime.

The ALJ limited the weight he gave to the Plaintiff's opinion since it rested primarily on Plaintiff's own unreliable account of her medical history and her reports of symptoms greater than and inconsistent with the objective medical records.  Similarly, he gave little weight to Kim Ursery's third-party report since objective medical evidence did not support her subjective opinion.

This Court agrees with the ALJ's analysis.  Substantial evidence supported his determination to favor the physicians' opinions and to reject Plaintiff's opinion.  Since his analysis and conclusion were well articulated and supported by substantial evidence in the record, the ALJ did not err in his assessment of the relative credibility of Plaintiff and the various medical experts, nor in his decision to favor the opinion of the physicians over that of Plaintiff.

**III.    Conclusion and Order**

The Court finds that the ALJ applied appropriate legal standards and that substantial evidence supported the ALJ's determination that Plaintiff was not disabled.  Accordingly, the Court

**DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and against

Plaintiff.


IT IS SO ORDERED.

    Dated:   **June 12, 2014**                    **/s/ Sandra M. Snyder**
                                                   UNITED STATES MAGISTRATE JUDGE